# Nicoll, Appellant, *v.* D. B. Martin Co.

*Practice, C. P.—Affidavits of defense—Sufficiency—Contracts—Contract of agency.*

In an action of assumpsit to recover the purchase price of coal and commissions due thereon, an affidavit of defense is sufficient, which alleges that the contract was made under the rules and regulations of the United States fuel administration, which contained a specification of the character of coal which could be shipped subsequent to the date of the making of the contract, and that the several shipments of coal involved were full of impurities, and were not of a character permitted in the United States fuel administration regulations. The affidavit further averred that the said coal had been examined by an inspector on behalf of the Pennsylvania fuel administration, who had condemned and rejected the same because it did not meet the government requirements, and that due notice of the condemnation and rejection of said coal had been given by the inspector of the United States fuel administration to the plaintiff, and that notice of said rejection had also been given to the plaintiff by the defendant. Under such circumstances, a rule for judgment for want of a sufficient affidavit of defense is properly discharged.

Argued October 21, 1919. Appeal, No. 239, Oct. T., 1919, by plaintiff, from judgment of C. P. No. 4, Phila. Co., December Term, 1918, No. 4852, discharging rule for judgment for want of a sufficient affidavit of defense in the case of Benjamin Nicoll, trading as B. Nicoll & Company v. D. B. Martin Company, a corporation. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER and KELLER, JJ. Affirmed.

Rule for judgment for want of a sufficient affidavit of defense.

The facts are stated in the opinion of the Superior Court.

The court discharged the rule. Plaintiff appealed.

*Error assigned* was the order of the court.

*Joseph J. Brown,* and with him *Henry P. Brown,* for appellant, cited: Independent Brick Company v. Biddle, 17 D. R. 1083; Folsom Real Estate Co. v. Esmark, 38 Pa. Superior Ct. 580, 582; Piano Co. v. Landan, 67 Pa. Superior Ct. 415, 417; Heyser Lumber Co. v. Whiting Lumber Co., 62 Pa. Superior Ct. 76.

*Horace M. Schell,* for appellee.

OPINION BY PORTER, J., February 28, 1920:

The plaintiff in this action seeks to recover an amount alleged to be due him for expenditures made and services performed under two contracts with the defendant, by which plaintiff was employed as agent to purchase bituminous and Arnold Run coal for the defendant. An affidavit of defense was filed which the court below held to be sufficient and discharged a rule for judgment, from which order the plaintiff appeals.

Execution of the written contracts, copies of which were attached to the plaintiff's statement, was not denied by the affidavit of defense. One contract was dated September 10, 1918, and related to the purchase of bituminous coal, the other was dated September 28, 1918, and provided for the purchase of Arnold Run coal; they were identical in their terms except as to the clause designating the character and quantities of coal to be purchased. The contracts were "between D. B. Martin Co., party of the first part, hereinafter called the principal, and B. Nicoll & Co. (United States Fuel Administration, No. 196), party of the second part, hereinafter called the purchasing agent." The covenants of the contracts now material to be considered are as follows:

"1. The principal hereby employs the purchasing agent as its agents and representatives with full power and authority to purchase at the United States government price, but on such terms and subject to such conditions as the purchasing agent may deem expedient, and in the name of either the principal or purchasing

agent, as the latter may deem fit (here the kind and quantity of coal to be purchased is inserted), for shipment to the principal at Philadelphia,........during an approximate period or at once. The purchasing agent hereby accepts such employment."

"2. On each ton of coal purchased by the purchasing agent for the principal under this contract the principal agrees to pay the purchasing agent as his full compensation for the services rendered to the principal hereunder, the sum allowed by the United States fuel administration at the time of purchasing; said compensation is to be paid monthly, and on the 15th of each and every month on the quantity of coal shipped during the preceding month."

The statement averred that under the authority conferred by the contract, the plaintiff had purchased upon behalf of the defendant two cars of bituminous coal, at the United States government price of $3.10 per net ton f. o. b. loading siding and the said price was paid by the plaintiff to the vendors of the said coal on or before October 16, 1918; that said cars were consigned and shipped to the defendant on or about October 10, 1918. It averred, also, that in pursuance of the authority conferred by the contract the plaintiff had, on October 2, 1918, purchased on behalf of the defendant six cars of Arnold Run coal at the United States government price of $2.75 per net ton f. o. b. mines, and the said price was paid by the plaintiff to the vendors of the said coal on or before October 2, 1918, and said cars were consigned and shipped to the defendant on or about October 12, 1918. It averred that at the time of said purchases the United States fuel administration allowed the plaintiff to be paid a commission of 15 cents per net ton in addition to the United States government price at which the coal had been purchased, and that the plaintiff was entitled to recover the amounts which he had paid for the coal and the commission of 15 cents per ton, making in all $1,139.83.

The affidavit of defense averred that the contracts were made under and subject to the rules and regulations of the United States fuel administration, and under and by virtue of a certain permit issued by the United States fuel administration to the plaintiff and numbered 196; that among the regulations of the United States fuel administration was an order issued May 27, 1918, to become effective June 1, 1918, and in force at the time these contracts were made and at the time said coal was alleged by the plaintiff to have been purchased, which provided as follows:

"Section I.    After the effective date of this order, no bituminous coal shall be sold, shipped, or distributed, if the same contains such a quantity of rock, slate, bone, sulphur, fire clay, shale, or such other form of impurities, that it would not have been considered merchantable prior to January 1, 1916."

The affidavit averred, as to the several shipments of coal involved, that they were promptly inspected upon their arrival and found to contain large quantities of rock, slate, bone, and other forms of impurities, and were not such as would have been considered merchantable prior to January 1, 1916, and were for that reason rejected by the defendant; that the said coal was examined by the United States fuel administration, by an inspector on behalf of the Pennsylvania fuel administration, who upon examination thereof, condemned and rejected the same, by reason of the fact that the same contained such a quantity of rock, slate, bone and other forms of impurities, that the same would not have been considered merchantable prior to January 1, 1916, and that due notice of the condemnation and rejection of said coal by the said inspector, on behalf of the United States fuel administration was given to the plaintiff and that due notice of said rejection and condemnation by the fuel administration was likewise given to the plaintiff by the defendant.

The plaintiff is here seeking to recover not only his commission of 15 cents per ton but the whole price of the coal which he claims he purchased on behalf of the defendant, and it has been argued that under the terms of the contract the defendant was required to pay on the 15th of each month for all coal purchased during the preceding month. We cannot so construe the contract. The commission allowed by the United States fuel administration was to be paid on the 15th of each month for all coal delivered during the preceding month, but the contract says nothing about when the coal, which the plaintiff was authorized to purchase at the government price, was to be paid for. That was a matter entirely dependent upon the contracts which the plaintiff was authorized to make on behalf of defendant. The contract authorized the plaintiff to purchase on such terms and subject to such conditions as he might deem expedient, and in either his own name or that of the defendant. If he purchased in his own name that would involve a personal liability upon his part and in that case he would have an implied authority to pay for the coal and call upon the defendant to reimburse him. If he purchased in the name of the principal, the defendant, the latter would become bound to the seller of the coal, and there is nothing in this contract which, under the facts as now presented, would authorize the plaintiff to discharge that obligation of his principal and look to the latter for reimbursement: 2 Corpus Juris, page 794. The plaintiff in his statement does not attempt to give the terms of the contracts which he made with the sellers of the coal, nor does he state with whom those contracts were made. He does state that "The said coal was purchased upon behalf of the defendant at the United States government price of $3.10 per net ton f. o. b. loading siding," but he does not even state where those "loading sidings" were located. He states, that, "On or about October 2, 1918, he purchased on behalf of the defendant six cars of Arnold Run coal at the United States

government price......and said price was paid by the plaintiff to the vendors of the said coal on or before October 2, 1918." Immediately following this statement he avers that the said coal was consigned and shipped to the defendant on or about October 12, 1918. Now, if these averments of the statement are correct he had made a contract for future delivery of the coal and paid for it in full at or prior to the time of making the contract. There is nothing in this contract which, under the facts as presented by the record, authorized the plaintiff to thus pay in advance for coal to be delivered in the future and then, after the seller of the coal had failed 'to deliver coal of the character required by the regulations of the fuel administration, recover of his principal the amount which he had thus advanced. It may be that when the facts are fully developed the contracts made with the sellers of the coal involved a personal liability of the plaintiff to pay for it, but the case as now presented does not so clearly involve a liability of the defendant to pay for the coal as to warrant the entry of judgment for the price of the coal.

The appellant has printed in his paper-book a copy of the entire order of the United States fuel administration from which the section recited in the affidavit of defense is quoted and contends that when the section in question is read in connection with the other sections of the order it must be held that it was the intention of the fuel administration to prohibit the sale, shipment or distribution of only such bituminous coal as had been condemned at the mines in the manner provided for by such regulations. It has been assumed by the parties in this case that the court would take judicial notice of the regulations, although they are not set forth in full in plaintiff's statement nor in the affidavit of defense. The prohibition of sale, shipment or distribution of coal containing such a quantity of impurities as would have been considered unmerchantable prior to January 1, 1916, contained in the first section of the regulations is

absolute.  The other sections of the regulation authorize
the appointment of an adequate number of coal in-
spectors in each district, define their duties, and provide
what shall be done with coal when it is condemned.  We
find nothing in these regulations which requires that all
coal must .be inspected at the mines before it is shipped.
Paragraph 2 of section III provides that inspectors shall
inspect coal mining operations and the coal produced in
the territory assigned to them "periodically and at such
times as may be directed by the district representative
in charge of the territory in which they are working."
This clearly indicates that it was not the purpose of the
regulations to require the inspection of all coal before it
was shipped, the inspection provided for was a general
supervision of the operations of the mines, for the pur-
pose of familiarizing the inspectors with the prevailing
conditions and making suggestions to the operators and
employees for the purpose of effecting an improvement
in the quality of the coal produced.  We find nothing in
the regulations to warrant the conclusion that the pro-
hibition of the first section of the regulations be-
comes ineffective as soon as the unmerchantable coal
escaped inspection at the mines.  If the allegations of
the affidavit of defense are true the dealings of the
plaintiff and defendant were subject to the regulations
of the fuel administration, the plaintiff was a licensee
under that administration, his claim of a commission of
15 cents per ton on coal purchased is founded upon a
regulation of the United States fuel administration, and
it cannot be sustained if the sale was such as was pro-
hibited by the same regulations.  It does not appear,
from an examination of the statement and affidavit of
defense, whether this coal was, or was not, inspected at
the 'mines.  The rule for judgment for want of a suffi-
cient affidavit of defense was properly discharged.

The order of the court below is affirmed, and the ap-
peal dismissed, without prejudice, etc.